# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) <br> CHENG & COMPANY L.L.C., ) <br> ) <br> Debtor. ) | 23-00104-ELG <br> CHAPTER 7 |
| In re: ) <br> ) <br> JUMBO SEAFOOD RESTAURANT, INC., ) <br> ) <br> Debtor. ) | Case No. 24-00090-ELG <br> Chapter 11 <br> Subchapter V |
| JUMBO SEAFOOD RESTAURANT, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> Vs. ) <br> ) <br> WENDELL WEBSTER, in His Official ) <br> Capacity as Chapter 7 Trustee of the ) <br> Estate of Cheng & Company L.L.C., ) <br> ) <br> Defendant. ) | Adv. Proc. No. 24-10013-ELG <br> Adv. Proc. No. 24-10014-ELG |

## MOTION TO DISMISS ADVERSARY PROCEEDINGS

Wendell W. Webster, Chapter 7 trustee (the "Trustee") of the estate of Cheng & Company L.L.C. (the "Landlord Debtor"), by and through his undersigned attorneys, hereby, pursuant to Fed. R. Civ. Proc. 12(b)(6), made applicable herein by Fed. R. Bankr. Proc. 7012, files this *Motion*

_____
Janet M. Nesse (D.C. Bar 358514)
Justin P. Fasano (DC Bar MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jnesse@mhlawyers.com
jfasano@mhlawyers.com
*Counsel to the Trustee*

*to Dismiss Adversary Proceeding* (the "Motion"), seeking to dismiss the Complaint filed by Jumbo Seafood Restaurant, Inc. (the "Tenant Debtor"), and in support thereof, states as follows:

## INTRODUCTION

The Court is well aware of the history of the "transfers" herein sought to be avoided, having ordered such transfers to have been made in the first place. Accordingly, the history of these proceedings is not repeated here. The Trustee's motion for relief from stay, and the allegations therein, are incorporated by reference.

Instead, the Trustee suggests that this case should be called out for what it is. This bankruptcy and adversary proceeding represent a last-ditch attempt by Tony Cheng to renege on promises to his creditors and the Trustee in order to maintain control of his restaurant as long as possible, and to complicate the sale of the building in which the Tenant Debtor's restaurant is located. Despite the Debtor only agreeing to pay half rent, the Trustee gracefully allowed the Tenant Debtor to stay in that building because of Tony Cheng's stated desire to remain open through the Chinese New Year, an important business day for a Chinese restaurant. The Chinese New Year has come and gone; the Tenant Debtor remains in the building, the Tenant Debtor now seeks to void the Court-ordered relief to which it agreed, and to recover the half-rent that the Court ordered it to pay. Incredibly, the Tenant Debtor alleges this is possible the Court-appointed trustee hired to replace Tony Cheng is an insider. The Tenant Debtor's assertions and Complaint fail as a matter of law, and these Complaints should be dismissed.

## ARGUMENT

In evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal citations omitted). However, well-pled facts do not include legal

conclusions, elements of a cause of action, bare assertions devoid of further factual enhancement, unwarranted inferences, unreasonable conclusions, or arguments. *Id.* Rule 8 governs the minimum pleading standards of a complaint.[1] Subsection (a)(2) of Rule 8 provides that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and more recently in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court examined the minimum pleading requirements to survive a Rule 12(b)(6) motion, holding: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

The complaint must be dismissed because (i) the termination of the lease cannot be avoided as a preference; (ii) the Trustee was not an insider of Tenant Debtor at the time of the Consent Order or any payments made pursuant to the Consent Order; (iii) the Trustee provided subsequent new value greater than the value of any payments made pursuant to the Consent Order; and (iv) payments made pursuant to the Consent Order are properly classified as holdover "rent" in that they are payments to be allowed to stay in the Property until a date certain.

First, as multiple courts have held, the pre-petition termination of a lease simply cannot be avoided because sections 365(c)(3) of the Bankruptcy Code takes precedence over the avoidance sections thereof. *In re Egyptian Bros. Donut, Inc.*, 190 B.R. 26, 31 (Bankr. D.N.J. 1995) (holding that section 365(c)(3) of the Bankruptcy Code, as the more specific section, prohibited using a trustee's avoidance powers to reinstate a properly terminated lease); *In re Haines*, 178 B.R. 471, 474 (Bankr. W.D. Mo. 1995) (same); *In re 421 Willow Corp.*, No. MISC.

---

[1] Bankruptcy Rule 7008(a) incorporates Rule 8 in adversary proceedings. Fed. R. Bankr. Proc. 7008.

3

03-182, 2003 WL 22318022, at *5 (E.D. Pa. Oct. 9, 2003) (same); *In re Jermoo's, Inc.*, 38 B.R. 197 (Bkrtcy.W.D.Wisc.1984) (same conclusion, applying section 365 to franchise agreement); *In re Coast Cities Truck Sales, Inc.*, 147 B.R. 674, 677 (D.N.J. 1992), *aff'd sub nom. Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 5 F.3d 1488 (3d Cir. 1993) (same conclusion with regard to dealership agreement). As stated in the *Jermoo's* case,

> The structure of the Bankruptcy Code reflects this understanding of the difference between the loss of rights under an executory contract and other transfers of property. A separate section (11 U.S.C. § 365) governs the treatment of executory contracts. It would be anomalous, to say the least, to expect that the drafters of a generally thrifty codification of bankruptcy law would devote a substantial section of the Code to the subject of the assumption or rejection of executory contracts and unexpired leases, while at the same time allowing a portion of that subject to spill over into the section governing fraudulent transfers and obligations. There is no indication in the language of § 365, § 548, or the legislative history of the Code, that the drafters had such an unlikely intention. Nor has any court, so far as we are informed, so concluded since the adoption of the Bankruptcy Code.

*In re Jermoo's Inc.* 38 B.R. 197, 204 (Bankr.W.D.Wis.1984). Even the Seventh Circuit, which allowed potential damages for a purportedly preferential termination of a lease, would not allow the estate to use avoidance powers to a reinstate a lease because that "would have the disruptive effect on commercial activity against which section 365(c)(3) is aimed." *In re Great Lakes Quick Lube LP*, 816 F.3d 482, 485 (7th Cir. 2016). There is no modern case which allows the use of avoidance powers to reinstate a terminated lease, and Count One of the Complaint should be dismissed on this ground alone.

Second, the Consent Order was entered more than ninety days before the Tenant Debtor's bankruptcy. If the Tenant Debtor wants to avoid transfers made more than 90 days before the Debtor's bankruptcy under 11 U.S.C. § 547, it must prove that the Tenant Debtor was an insider of the Landlord Debtor **at the time of the transfer**. 11 U.S.C. § 547(b)(4)(B); *see also Butler v. David Shaw, Inc.,* 72 F.3d 437, 441 (4th Cir. 1996) (former officer was not insider of debtor at

time of transfer); *In re Henderson*, 96 B.R. 820 (Bankr. E.D. Tenn. 1989) ("The success of the trustee's action depends upon whether Economy was an insider at the time of the transfers. Because the court concludes Economy was not an insider at the time of the transfers, the trustee's action must fail.").

At the time of the Consent Order, Tony Cheng (the principal of the Tenant Debtor) was not in control of the Landlord Debtor. Wendell Webster was. The Fourth Circuit has rejected the idea that a former officer was an insider of the Debtor in *Butler*, supra. Butler is summarized below:

> In *Butler v. David Shaw, Inc.,* a sole shareholder sold his entire interest in the company to a purchaser. In exchange, the former owner received cash, a promissory note, a stock option, and employment for himself and his wife. 72 F.3d 437, 439–40 (4th Cir.1996). The former owner retained the title of manager, but "[h]e did not make personnel decisions, did not handle the payroll or accounts receivable, and was otherwise uninvolved in the management of the business." *Id.* at 443. In *Butler,* the Court rejected the Trustee's argument that the former owner was an "insider" because he did not " 'exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets.' " *Id.* (quoting *In re Babcock Dairy Co.,* 70 B.R. 662, 666 (Bankr.N.D.Ohio 1986)). The Fourth Circuit was also concerned about public policy implications, explaining that the Trustee's approach would "expand the statutory definition of the term 'insider' in a manner that leads to an unduly litigious result" and stating "we are loathe to adopt an interpretation of the bankruptcy code that would blur the line established by 11 U.S.C.A. § 101(2)(A), (31)(E)." *Butler,* 72 F.3d at 442.

*Smith v. Porter*, 416 B.R. 264, 271–72 (E.D. Va. 2009). The Consent Order provision for the termination of any possessory rights was a transfer (to the extent that an order of this Court can be said to be a transfer) for the benefit of the Trustee and the Landlord Debtor's estate, not the Landlord Debtor. There is simply no basis to say Wendell Webster is an insider of Tony Cheng. The reason Wendell Webster was appointed because of Tony's Cheng's favorable treatment of the Tenant Debtor, of which *Tony Cheng* was an insider. Wendell Webster could not have been

appointed if he was not disinterested, which by definition means he is not an insider. 11 U.S.C. 701(a)(1) (requiring appointment of "disinterested" trustee, 11 U.S.C § 101(14) (defining insiders as not disinterested). Accordingly, the Consent Order cannot be avoided as a preference because it was entered more than ninety days before the Tenant Debtor's bankruptcy.

Third, by agreeing to the Consent Order, the Tenant Debtor has conceded that the right to stay in the Property was worth more than $10,000 per month to it. The Lease the Tenant Debtor purports to have signed required $20,000 per month. $10,000 per month is not enough to service the Landlord Debtor's liens and real estate taxes, even if the liens were not already in default. The payments made by the Tenant Debtor prior to its bankruptcy were made at the beginning of each month, after which it stayed in Landlord Debtor's Property. The Trustee has therefore provided, as a matter of law, subsequent new value to the Tenant Debtor greater than the value of the payments made. *In re Workboats Nw., Inc.*, 201 B.R. 563, 566 (Bankr. W.D. Wash. 1996) ("a landlord may set off, as new value, delinquent rent accruing subsequent to preferential payments.").

Fourth, the payments made under the Consent Order were clearly similar to rent. They enabled the Tenant Debtor to stay in the Property. In return, the Tenant Debtor conceded to the turnover of the Property on February 29, 2024, and waived its rights to drag things out in Superior Court, or to request an adversary proceeding demanding turnover. The Consent Order specifically provides that it was:

> **ORDERED**, that [the Tenant Debtor] shall be allowed to remain in the [Landlord Debtor]'s real property located at 619 H Street, N.W., Washington D.C. 20001 ("Property") to and including midnight February 29, 2024 so *long as it pays the Trustee $10,000 on or before December 1, 2023, an additional $10,000 on or before January 1, 2024; and an additional $10,000 on or before February 1, 2024…*

6

The Consent Order was the result of a compromise that allowed the Tenant Debtor to make several monthly payments, remain in the Property through the Chinese New Year, and then provided for immediate turnover of the Property. In exchange, any right to an adversary proceeding requesting turnover was waived, and the Trustee was to be immediately entitled to a writ of execution. Consent orders are the result of compromises approved by the Bankruptcy Court, and in order to encourage such compromises, they must be enforced. Accordingly, Count II, requesting a declaratory judgment that the Consent Order represents an expired but not terminated lease, must be dismissed.

WHEREFORE, Defendant requests that the Complaint (1) be dismissed without leave to amend; (2) the Defendant receive an award of the fees and costs of this response, and that the Court grant such other relief as it deems appropriate and proper.

Dated:  April 18, 2024                   Respectfully submitted,

/s/ *Justin P. Fasano*
McNamee Hosea, P.A.
Justin P. Fasano, Esquire (Bar No. MD21201)
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
Phone: 301-441-2420
jfasano@mhlawyers.com
*Counsel for Wendell W. Webster, Chapter 7 Trustee for Cheng & Company L.L.C*.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2024, a copy of the foregoing was filed and served via the Court's Electronic Case Filing System on all parties receiving such notification.

/s/ *Justin P. Fasano*
Counsel